UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

ROBERT G. BRUCE, JR. and
DEBORAH BRUCE,

            Plaintiffs,                              Case No.  1:12-CV-1384

v.                                              HON. GORDON J. QUIST

HAWORTH, INC.,

            Defendant.

———————————————/

## OPINION

      Plaintiffs, Robert G. Bruce and Deborah F. Bruce, are Georgia residents who have sued Defendant, Haworth, Inc., a Michigan corporation with its principal place of business in Michigan. The Bruces allege, among other things, that an overhead cabinet door on a workstation hutch that Haworth designed, manufactured, and shipped from Michigan and that caused a severe and permanent injury to Robert while working for his employer in Georgia was defectively designed and/or manufactured and not reasonably fit for its reasonable and foreseeable uses.  The parties have filed cross-motions for summary judgment raising the single issue of whether Georgia's statute of repose, Ga. Code Ann. § 51-1-11(b)(2), applies in this case to bar some or all of the Bruces' claims.[1] The Court heard oral argument on the cross-motions by telephone on February 27, 2014.

      For the following reasons, the Court concludes that § 51-1-11(b)(2) applies to bar all claims except the failure-to-warn claim in Count III, the breach of implied warranty claim in Count IV, and the loss of consortium claim in Count V.  The Court will dismiss the breach of implied warranty

———————————————

[1] Although the Bruces' motion is styled as a motion for application of Michigan law, the Court treats it as a motion for summary judgment.

claim, however, on the agreed-upon ground that Robert lacks privity with Haworth. Accordingly, the Court will deny the Bruces' motion and grant Haworth's motion in part and deny it in part.

## I. Background

### A. Pertinent Facts

The Bruces are Georgia residents and resided in Georgia at all times relevant to the instant litigation. On April 27, 2011, Robert Bruce sustained a permanent and severe traumatic brain injury when the hinge-mounted metal front door of an overhead cabinet on a wall-mounted workstation hutch fell on his head, as he was looking into the cabinet. Robert sustained the injury while working for his employer, Cisco Systems, at its offices in Lawrenceville, Georgia.

The workstation unit is a Haworth brand known as a Premises storage unit, with a front door that slides up and over the top of the overhead cabinet. (Durken Decl. ¶ 4, dkt. # 32-3.) Scientific Atlanta purchased the workstation unit in October 1998 as part of a large order of Premises brand workstations for its Lawrenceville facility, through Office Images, an independent Haworth dealer located in Roswell, Georgia. (*Id.* ¶ 6.) Haworth manufactured the workstation units in Holland, Michigan, and shipped them to Scientific Atlanta in Georgia. Office Images performed the final assembly of the workstation units at Scientific Atlanta's Lawrenceville, Georgia, offices. (*Id.* ¶ 7.) The workstation unit at issue was manufactured in December 1998 and shipped to Scientific Atlanta no later than May 20, 1999. (*Id.*) Cisco Systems subsequently purchased Scientific Atlanta.

Haworth is a global manufacturer of organic workspaces, including raised floors, movable walls, systems furniture, and other office components, and is headquartered in Holland, Michigan. (*Id.* ¶ 2.) It has been registered to conduct business in Georgia since 1979. (*Id.* 8.) From 2008 through 2012, Haworth had between six and eight independent dealers in Georgia, and maintained between ten and eighteen full-time sales employees in Georgia, with a total payroll of between $1

million and $1.7 million.  (*Id.* ¶¶ 11–12.)  During that time, Haworth paid its dealers sales fees ranging from $15.7 million to $23.5 million per year.  (*Id.* ¶ 12.)  Haworth also pays annual licence fees to the State of Georgia and also generates more than $150,000 in sales and use taxes each year.  (*Id.* ¶ 13.)  Haworth has purchased insurance that provides coverage for the losses alleged in this case.  (*Id.* ¶ 14.)

The Bruces filed their complaint against Haworth on December 20, 2012, alleging claims for products liability pursuant to M.C.L. § 600.2946(2) (Count I), strict liability (Count II), negligence (Count III), breach of implied warranty (Count IV), and loss of consortium (Count V).  (Dkt. # 1.)  Haworth filed an answer and affirmative defenses, in which Haworth alleged, among other things, that the Bruces' claims may be "barred or limited by the applicable statutes of limitation" and that the Bruces' claims may be barred or limited by the Michigan Products Liability Statute, M.C.L. § 600.2934 *et seq.*  (Dkt. # 6, Page ID 26–28.)

**B.    Georgia's Statute of Repose**

The Georgia Legislature has enacted a statute of repose governing products liability claims, which provides, in relevant part:

> (b)(1)  The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.
>
> > (2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

Ga. Code Ann. § 51-1-11(b)(1), (2).  Product claims based on the manufacturer's negligence are also subject to the ten-year repose period.  Ga. Code Ann. § 51-1-11(c).  The purpose of the statute of

repose is to eliminate stale claims and stabilize insurance underwriting of products liability claims by curtailing manufacturers' open-ended liability for such claims. *Chrysler Corp. v. Batten*, 264 Ga. 723, 725, 450 S.E.2d 208, 212 (1994) (citing *Love v. Whirlpool Corp.*, 264 Ga. 701, 703, 449 S.E.2d 602, 605 (1994)). It is undisputed that, if applicable, Georgia's statute of repose would bar at least the Bruce's products liability and negligence claims set forth in Counts I through III because the workstation unit at issue was first sold for use or consumption more than thirteen years before the Bruces filed their complaint in this case.

## II. DISCUSSION

At issue in the instant cross-motions is whether Georgia's statute of repose applies to bar some or all of the Bruces' claims. The Bruces contend that under Michigan's choice-of-law rules, Michigan law should apply because Michigan is the only state that has a compelling interest in the application of its law—that is, Michigan's interest in ensuring the safe design and manufacture of products produced by Michigan-based manufacturers—while Georgia has no interest in having its statute of repose applied to a Michigan defendant that designed, manufactured, and sold the product at issue in Michigan. The Bruces argue that because their claims are timely under the applicable Georgia and Michigan statutes of limitation, Haworth's motion must be denied. The Bruces further assert that even if the statute of repose applies to their claims, it does not bar their breach of implied warranty claim and the failure-to-warn component of their negligence claim.

Haworth, on the other hand, contends that analogous caselaw from both the Michigan Court of Appeals and the Sixth Circuit compels the application of Georgia's statute of repose in this case under Michigan's choice-of-law principles. Haworth also contends that apart from a choice-of-law analysis, Michigan's borrowing statute, M.C.L. § 600.5861, requires the Court to apply Georgia's statute of repose to the Bruces' claims. Finally, as to the Bruces' breach of implied warranty and

failure to warn claims, Haworth contends that those claims fail as a matter of law because Robert lacks privity with Haworth as required for a warranty claim under Georgia law, and the failure to warn claim is merely a repackaged version of the negligent design claim barred by the statute of repose.

## A.    Choice-of-Law Analysis[2]

It is well established that, in a diversity case such as this one, a federal court must apply the law of the state in which the court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S Ct. 817, 822 (1932). This rule extends to the forum state's choice-of-law rules. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Because the Bruces filed this action in federal court in Michigan, Michigan's choice-of-law rules apply. *Id.* In addition, this Court is bound to follow the decisions of the Michigan Supreme Court. *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("A federal court exercising diversity jurisdiction must follow the decisions of the state's highest court when that court has addressed the relevant issue." (internal quotation marks omitted)).

> Where the highest court has not yet ruled on an issue, however, the federal court should predict how that court would rule by examining all the relevant data. "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [highest court] would decide otherwise." *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)).

*Toledo Edison Co. v. ABC Supply Co.*, 46 F. App'x 757, 762 (6th Cir. 2002).

---

[2]In their opening brief, the Bruces contend that, having raised various affirmative defenses based on Michigan's Products Liability Statute, Haworth should be precluded from arguing that Georgia's statute of repose bars the Bruces' claims. In so arguing, the Bruces cite no specific legal principal, such as waiver or judicial estoppel, that bars Haworth's reliance on the Georgia statute of repose, nor do they cite any case for the proposition that raising a particular state's law as to one aspect of the litigation bars the proponent from asserting another state's law pertaining to another aspect of the litigation. In fact, the Bruces themselves advocate for the application of *depecage*—the practice of applying the laws of different states to different issues in the same case. *See New Hampshire Ins. Co. v. Carleton*, 502 F. App'x 478, 484 n. 7 (6th Cir. 2012).

Michigan law will ordinarily apply to tort claims unless there is a "rational reason" to displace it. *Olmstead v. Anderson*, 428 Mich. 1, 29-30, 400 N.W.2d 292, 305 (1987). The Michigan Supreme Court has explained the analysis as follows:

> [W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997). "Although this balancing approach most frequently favors using the forum's (Michigan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 229 Mich. App. 580, 585, 582 N.W.2d 866, 868 (1998).

Initially, the Court addresses the Bruces' argument that the Georgia statute of repose is not even subject to a choice-of-law analysis because Georgia courts have held that the statute is procedural in nature. Even assuming that the Bruces' statement of Georgia law is correct,[3] the point is irrelevant because this Court must look to Michigan law in determining whether the Georgia statute of repose is procedural or substantive. *Kleve v. Negangard*, 330 F.2d 74, 76 (6th Cir. 1964) ("Subject to constitutional limitations, the conflict of laws of the forum state controls as to whether questions involving limitations of actions are procedural or substantive."); *see Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 746 (6th Cir. 1999) (applying Michigan common law choice-of-law rule

---

[3] The Bruces rely on *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 678 S.E. 2d 489 (2009)—a decision of the Georgia Court of Appeals—to support their assertion that § 51-1-11(b)(2) is procedural. On the other hand, citing *Smith v. Cobb County-Kennestone Hospital Authority*, 262 Ga. 566, 423 S.E.2d 235 (1992), and *Browning v. Maytag Corp.*, 261 Ga. 20, 401 S.E.2d 725 (1991), Haworth contends that the Georgia Supreme Court considers statutes of repose, in general, and § 51-1-11(b)(2) in particular, as affecting substantive rights. Because the Court decides the issue based on Michigan law, it need not resolve the question of how Georgia law characterizes statutes of repose.

to determine that statutes of limitation are procedural and thus governed by the law of the forum). Looking to Michigan law, Michigan courts routinely consider other states' statutes of repose when applying Michigan's choice-of-law rules. *See, e.g.*, *Farrell v. Ford Motor Co.*, 199 Mich. App. 81, 92–94, 501 N.W.2d 567, 572–73 (1993) (plaintiff's claim barred by North Carolina's six-year statute of repose under Michigan's interest-analysis rule).

In arguing that the Georgia statute of repose does not apply in this case under a proper application of Michigan's choice-of-law rules, the Bruces urge the Court to follow the Supreme Court of New Jersey's decision in *Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106 (1996), the Sixth Circuit's decision in *Mahne v. Ford Motor Co.*, 900 F.2d 83 (6th Cir. 1990), and a case from the Eastern District of Michigan, *Brandt v. Starwood Hotels and Resorts Worldwide, Inc.*, No. 02-10285-BC, 2004 WL 2958661 (E.D. Mich. Dec. 14, 2004). The Court declines to do so and instead is guided by several Michigan Court of Appeals decisions that control the choice-of-law analysis in this case.

The first case, *Hampshire v. Ford Motor Co.*, 155 Mich. App. 143, 399 N.W.2d 36 (1987) (per curiam), was a products liability action based on an incident that occurred in California. The plaintiff was injured when the driver of a stolen car manufactured by Ford hit the plaintiff's car. The plaintiff alleged that the stolen Ford was defective because defects in the car's ignition locking system encouraged car thefts that resulted in injuries to motorists struck by stolen cars. *Id.* at 145, 399 N.W.2d at 37. Balancing the relevant states' interests, the court found that California had a "superior" interest in the application of its law, while Michigan had "no significant interest in [the] litigation." *Id.* at 146–47, 399 N.W.2d 36, 38. The court reasoned that the plaintiff was a resident of California at the time of the accident and had never resided in Michigan, the accident occurred in California, and the stolen Ford was registered and licensed in California. *Id.* at 147, 399 N.W.

2d at 38.  On the other hand, the court observed, Ford's headquarters and the filing of the case in Michigan were Michigan's only connections to the controversy.  *Id.*

In *Farrell v. Ford Motor Co.*, 199 Mich. App. 81, 501 N.W.2d 567 (1993), the plaintiff, the administrator of a North Carolina decedent's estate, brought a wrongful death action against Ford arising out of an accident in North Carolina that killed the decedent when the transmission of her Ford LTD station wagon slipped from park into reverse gear and backed over her.  The governing law was critical because the plaintiff's claims would be barred by North Carolina's six-year statute of repose for products liability actions if North Carolina law applied.  Consistent with its decision in *Hampton*, the court found that Michigan had "little or no interest" in having its law applied to a North Carolina accident involving a North Carolina resident and that Michigan had "no interest in affording greater rights of tort recovery to a North Carolina resident than those afforded by North Carolina."  *Id.* at 94, 501 N.W.2d at 572.  In contrast, the court found that North Carolina had "an obvious and substantial interest in shielding Ford from open-ended products liability claims," based on Ford's substantial business dealings in North Carolina.  *Id.* at 93, 501 N.W. at 572.  Specifically, the court noted that Ford employed 70 employees at its Charlotte facility, it purchased nearly $591 million worth of material from North Carolina suppliers in 1989, and that Ford cars and trucks comprised a large percentage of vehicles sold in North Carolina in 1989.  The court further noted that the sales taxes and salaries that Ford paid, as well as the materials it purchased, contributed to North Carolina's economy and gave the state a substantial interest in extending Ford the protection of its statute of repose.  *Id.*  Ford's lack of a manufacturing plant in North Carolina, and the fact that the defective vehicle may have been manufactured in whole or in part in Michigan, had no bearing on the court's conclusion that North Carolina law applied to the plaintiff's claims.  *Id.* at 93, 94 n.3, 501 N.W.2d at 572 & 572 n.3.  In reaching its decision, the *Farrell* court rejected the Sixth Circuit's

analysis in *Mahne v. Ford Motor Co.*, 900 F.2d 83 (6th Cir. 1990), which applied Michigan law under virtually indistinguishable facts, based on the Sixth Circuit's assumption that Florida's statute of repose was intended to protect only in-state manufacturers, not out-of-state manufacturers like Ford that would improperly benefit from the statute at the expense of a Florida resident. *Id.* at 90–92, 501 N.W.2d at 571–72 (discussing *Mahne*).

Similarly, in *Hall v. General Motors Corp.*, 229 Mich. App. 580, 582 N.W.2d 866 (1998), the court held that the same North Carolina statute of repose applied to the plaintiff's products liability claim that arose out of an accident that occurred in North Carolina even though the plaintiff, who was a North Carolina resident at the time of the accident, had relocated to Michigan at the time he filed suit. The court reasoned that Michigan had a minimal interest in applying its law, while North Carolina's interest was significant, because the plaintiff lived in North Carolina at the time of the accident, worked for a North Carolina employer, was injured by a vehicle owned, registered, licensed, and insured in North Carolina, and received medical treatment in North Carolina. *Id.* at 585–86, 582 N.W.2d at 868. Moreover, the court noted that North Carolina's interest in applying its statute of repose to General Motors was identical to its interest in applying the statute of repose to Ford in *Farrell*—encouraging General Motors to do business in its state. *Id.* at 586–87, 582 N.W.2d at 868–69.

The Court declines to follow the Supreme Court of New Jersey's decision in *Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106 (1996), which concluded that New Jersey law applied to a products liability action brought on behalf of a Georgia resident who was killed in Georgia by a machine manufactured by a New Jersey company. The court found that New Jersey had a strong interest in the application of its laws to encourage the manufacture and distribution of safe products to the public, which outweighed Georgia's interest in the application of its statute of repose. *Id.* at

489–90, 679 A.2d at 111–12.  The court concluded that because Georgia's statute of repose was not enacted to encourage a generally favorable environment for manufacturing, but instead to stabilize the Georgia insurance industry and keep stale claims out of Georgia courts, Georgia had no particular interest in applying its statute of repose to foreclose a lawsuit in New Jersey.  *Id.* at 493–94, 679 A.2d at 113–14.  As *Hampshire*, *Farrell*, and *Hall* demonstrate, however, the New Jersey court's choice-of-law analysis is at odds with Michigan law.  In the circumstances presented in the instant case—an injury occurring in a foreign state to a resident of that state—Michigan courts consistently hold that Michigan has a relatively minimal interest in having its law apply to the plaintiff's claim, even when the defendant is headquartered in Michigan and the product at issue was designed and/or manufactured in Michigan.  *See Farrell*, 199 Mich. App. at 94 & 94 n.3, 501 N.W.2d 572–73 & 572 n. 3.  In contrast, Michigan courts conclude that the foreign state has a significant interest in the application of its law, especially where the foreign state curtails products liability claims by means of a statute of repose.  *See id*. at 93–94, 501 N.W.2d at 572; *Hall* 229 Mich. App. at 585–87, 582 N.W.2d at 868–69.

Whether the Sixth Circuit's decision in *Mahne*—another of the Bruces' authorities—remains good law is questionable in light of the Sixth Circuit's recent decision in *Standard Fire Insurance Co. v. Ford Motor Co.*, 723 F.3d 690 (6th Cir. 2013), which acknowledged that the Sixth Circuit "may have missed the mark" in *Mahne* in attempting to discern how Michigan's highest court would have answered the choice-of-law issue.  The Sixth Circuit acknowledged that it is bound to follow the Michigan Court of Appeals decisions in *Hampshire*, *Farrell*, *Hall*, and *Mitchell v. McNeilus Truck & Manufacturing, Inc.*, No 304124, 2012 WL 5233630 (Mich. Ct. App. Oct. 23, 2012) (per curiam),  in applying "*Olmstead*'s teaching under analogous circumstances to find that the foreign state has a substantial interest in having its law applied."  *Id.* at 697.  Thus, relying on those cases

instead of *Mahne*, the Sixth Circuit concluded that Tennessee's interest in having its law, including its statute of repose, applied in a case involving an injury in Tennessee to a Tennessee resident's property outweighed Michigan's interests in the application of its law. *Id.*

Finally, the Bruces' reliance on *Brandt v. Starwood Hotels and Resorts Worldwide, Inc.*, No. 02-10285-BC, 2012 WL 2958661 (E.D. Mich. Dec. 14, 2004), is misplaced. The plaintiff in *Brandt* was a Michigan resident who was injured at a hotel in Florida. The plaintiff argued for the application of Florida law, which created a presumption of negligence arising from an accident on a premises. *Id.* at *3. The court concluded that Michigan law applied because "Florida's interest in protecting a foreign tourist is no greater than Michigan's interest in applying its law to its own citizens." *Id.* at *4. Thus, the Court found no substantial justification to displace Michigan law. Unlike the plaintiff in *Brandt*, the Bruces are Georgia plaintiffs, and Georgia therefore has a significant interest in applying its law to the Bruces' claims based on an injury that occurred in Georgia. *See Hall*, 229 Mich. App. at 586, 582 N.W.2d at 868 (North Carolina had a "substantial interest" in applying its law because the plaintiff was a North Carolina resident at the time of the accident that occurred in North Carolina).

As noted, Georgia's interest in the application of its law to this dispute is substantial. The Bruces were Georgia residents at the time of the incident and remain so today. Robert was injured by Haworth's product in Georgia while working for his employer in Georgia. On the other hand, Haworth is headquartered in Michigan, the workstation was designed and manufactured in Michigan, and Michigan is the forum state. Similar facts in *Hampshire*, *Farrell* and *Hall* were insufficient to give Michigan more than a minimal interest that outweighed that of the foreign state.[4]

---

[4] In *Standard Fire Insurance Co.*, the fact that the Lincoln Town Car at issue was manufactured at Ford's Wixom, Michigan plant, combined with Ford's substantial presence in Michigan, failed to tip the balance of interests in favor of Michigan law. *See Standard Fire Ins.*, 723 F.3d at 692, 698–99.

Moreover, similar to North Carolina in *Farrell* and *Hall*, Georgia has an interest in protecting Haworth from open-ended products liability claims to encourage Haworth and other out-of-state companies to do business in Georgia. The Bruces contend that this rationale is not supported in this case because Haworth is not Ford or General Motors, and its impact on Georgia's economy is much less than that of Ford or General Motors on North Carolina's economy. True enough, but neither can Haworth's impact on Georgia's economy be considered de minimis. In *Mitchell ex rel. Mitchell v. McNeilus Truck and Manufacturing, Inc.*, No. 304124 (Mich. Ct. App. Oct. 23, 2012) (per curiam), the court concluded that Ohio had an interest in extending its statute of repose to a company whose economic impact in Ohio was closer to Haworth's impact in Georgia than to Ford or General Motors' impact in North Carolina:

> While there is no claim that McNeilus has the kind of impact on Ohio's economy that Ford Motor Company may have had in North Carolina, McNeilus offered uncontradicted documentary evidence that McNeilus has two branch offices in Ohio, and in 2010 employed 15 people in Ohio and paid over $700,000 in wages to Ohio employees; these offices also purchased $11,235,402 worth of goods and paid $17,464 in property taxes in 2010. Although perhaps not as "substantial" as the interest in *Farrell*, we conclude that Ohio has an interest in encouraging commercial activity by McNeilus and affording McNeilus the protection of its statute of repose.

*Id.* at *6 (citation omitted). Haworth's evidence shows that its business activity in Georgia is not materially different from McNeilus's business activity in Ohio.

Even if Haworth conducted little or no business in Georgia, application of Georgia's statute of repose in this case would still further its purpose. In *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87 (3d Cir. 2008), the Third Circuit consulted the 1978 Report of the Georgia Senate Products Liability Study Committee to ascertain the purpose of Georgia's products liability statute of repose. Addressing product liability insurance rates, the 1978 Report stated:

> [T]he Committee found that premium rates are based on national experience. As a result of the interstate nature of products commerce and the inability to generate Statewide experience of meaningful size, the [Georgia] Insurance Department allows

product liability rates to be based on national data. Therefore, experience in other states is reflected in the premiums paid by Georgians.

*Id.* at 93 (quoting 1978 Report at 13) (alterations in original). The court noted that the 1978 Report identified five goals of product liability reform, including reducing "'[t]he instability and unpredictability associated with product liability litigation on a national level,'" and ensuring "'[t]he availability and affordability of product liability insurance,'" and made several recommendations to achieve those goals, including adoption of a ten-year statute of repose. *Id.* at 93–94 (quoting 1978 Report) (alterations in original). The court concluded that applying the statute of repose to a Pennsylvania products liability lawsuit by a Georgia resident would further Georgia's interest in stabilizing national insurance rates:

> The policy to stabilize national products liability litigation is implicated whenever a party to a products liability case is a Georgia resident. In other words, Georgia has determined that run-away products liability litigation on a national level has led to increased products liability insurance rates for all manufacturers, including those from Georgia. Georgia has sought to address this problem by barring strict products liability (and negligence) suits after ten years. Therefore, Georgia has an interest in barring any such suit, and its interest is implicated anytime a party to such a suit is a Georgia resident.

*Id.* at 94. Thus, as the Third Circuit recognized, Georgia has an interest in applying its statute of repose in this case—regardless of whether Haworth's insurers do business in Georgia, Haworth's insurance policies were underwritten in Georgia, Haworth paid insurance premiums from Georgia, or Haworth's policies even mention Georgia—simply because the Bruces are Georgia residents.

**B.     Michigan's Borrowing Statute**

Having concluded that Georgia law applies in this case, the Court need not address Haworth's argument that Michigan's borrowing statute, M.C.L. § 600.5861, requires application of Georgia's statute of repose. *See Hall*, 229 Mich. App. at 592, 582 N.W. 2d at 871.

## C.    Application of the Statute of Repose

Because the statute of repose applies, the product liability, strict liability, and negligence claims in Counts I through III are barred.  There is no dispute that the statute of repose does not bar failure-to-warn claims or breach-of-implied-warranty claims.  *See Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 836 n.2, 678 S.E.2d 489, 492 n.2 (2009) ("The statute of repose does not apply to failure-to-warn claims.").  Thus, the failure-to-warn claim alleged as part of Count III and the breach-of-implied warranty claim in Count IV are not barred.

Although the statute of repose does not affect the breach-of-warranty claim, it is still subject to dismissal because, as an employee of Cisco, Robert lacks privity with Haworth.  *See Beam v. Omark Indus., Inc.*, 143 Ga. App. 142, 146, 237 S.E.2d 607, 611 (1977) (noting that "privity is not extended to an employee of the purchaser").  Therefore, the Court will dismiss the breach-of-implied-warranty claim on this ground.

Haworth argues that the Court should also dismiss the failure-to-warn claim because it simply bootstraps the design defect claim that is barred by the statute of repose.  The Court declines to dismiss the case at this time, however, because the court in *Miller v. Ford Motor Co.*, 287 Ga. App. 642, 653 S.E.2d 82 (2007)—the case Haworth cites as support for its argument—dismissed the manufacturing defect claim on the basis of lack of evidence to support a manufacturing defect, rather than due to the statute of repose.  *See id.* at 644–45, 653 S.E.2d at 84.  The *Miller* court thereafter dismissed the failure-to-warn claim because it was predicated on the same allegation as the manufacturing defect.  *See id.* at 645, 653 S.E.2d at 85.  In fact, in conducting its own research, the Court has found no case in which a court dismissed a failure-to-warn claim on the basis that it was merely a repackaged claim barred by the statute of repose.  Accordingly, the Court will not dismiss the failure-to-warn claim at this time.

### III. Conclusion

For the foregoing reasons, the Court will deny the Bruces' motion, grant Haworth's motion in part and deny it in part, and dismiss all claims except the failure-to-warn claim alleged as part of Count III and the loss of consortium claim in Count V.

An Order consistent with this Opinion will enter.

Dated:  March 4, 2014                          _____/s/ Gordon J. Quist_____
                                                GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE